JOAN B. TUCKER FIFE (SBN: 144572)
jfife@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111
(415) 591-1000
(415) 591-1400

EMILIE C. WOODHEAD (SBN: 240464)
ewoodhead@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendants
LAND O'LAKES, INC. and KOZY SHACK
ENTERPRISES, LLC (erroneously sued
and served as Kozy Shack Enterprises, Inc.)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| ARTURO SALGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAND O'LAKES, INC., KOZY SHACK ENTERPRISES, INC., and DOES 1-25, inclusive,<br><br>Defendants. | **Case No. 1:13-CV-798-LJO-SMS**<br>Assigned to the Honorable Lawrence J. O'Neill and the Honorable Sandra M. Snyder<br><br>**DEFENDANT LAND O'LAKES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**<br><br>Complaint Filed: April 12, 2013<br>FAC Filed: September 16, 2014<br>Date: December 10, 2014<br>Time: 1:00 p.m.<br>Crtrm: 1, 8th Floor<br><br>[To be heard by Hon. Sandra M. Snyder] |

## I.   INTRODUCTION

Defendant Land O'Lakes, Inc. ("LOL") seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c) prohibiting plaintiff Arturo Salgado from compelling overbroad state-wide class discovery of employee time records, pay records, and contact information.[1]

Plaintiff worked in a warehouse and as a janitor at a small facility in Turlock, California that produces Kozy Shack pudding.  He worked there from 2008 before Kozy Shack Enterprises, Inc. ("KS") was acquired by LOL in July 2012, and for a short time thereafter until January 2013. Despite the fact that the overwhelming majority of Plaintiff's employment occurred before the LOL acquisition, he filed a formulaic class-action complaint seeking to represent a state-wide class of all non-exempt LOL employees from April 2009 to the present.  Plaintiff's overbroad class definition consists of over 1,000 employees working at 8 facilities.  Plaintiff worked at the sole facility that produced pudding and never worked at any of the other specialized dairy, feed, or cheese facilities. Some of the other facilities are still open, while others have closed.  Some are unionized, whereas others are not, and at least one facility has paid meal breaks.  There is no conceivable way Plaintiff can demonstrate that he is an adequate representative for a putative class of diverse state-wide LOL employees in different job assignments at different facilities engaged in different business lines.

There is good cause for a protective order because the state-wide discovery Plaintiff seeks of non-KS facilities where Plaintiff never worked, before any class being certified, is overbroad for a host of reasons:[2]  (1) Even after more than a year and a half of litigation and after LOL produced handbooks, policies, and collective bargaining agreements for facilities state-wide, Plaintiff has not proffered any evidence to make out a basic *prima facie* Rule 23 showing for the class allegations in his First Amended Complaint ("FAC") that includes non-KS facilities where Plaintiff never worked; (2) Plaintiff only worked at the KS facility and at ***no other California LOL facility*** (and consequently has no personal knowledge thereof); (3) LOL did not acquire KS until July 2012, prior

---

[1] The state-wide discovery that Plaintiff weeks is based upon discovery propounded to LOL, well before Plaintiff filed the First Amended Complaint ("FAC") adding Kozy Shack Enterprises, Inc. ("KS") as a named defendant.  Thus, this Motion is brought by LOL.
[2] LOL still maintains that Plaintiff has taken the parties' initial agreement to staged, pre-certification discovery in the Joint Scheduling Report (Dkt. 10) out of context and—relying on mischaracterizations of the parties' agreement—sought individualized discovery of all putative class members in pre-certification discovery requests. (Amended and Second Amended Joint Scheduling Reports, Dkts. 14, 18.)

to which ***KS was an entirely separate and distinct entity***; (4) Plaintiff worked under the LOL handbook *for only three weeks out of his over four-year employment* at the KS facility; (5) ***Plaintiff himself does not have standing*** to pursue several of his claims, which makes discovery into those claims for other individuals at other facilities additionally improper; and (6) ***Plaintiff has not and cannot proffer evidence that the violations he alleges were transpiring at KS were transpiring at other non-KS California facilities.*** Consequently, the individual experiences of employees at LOL's other California facilities are not relevant nor reasonably calculated to lead to the discovery of admissible evidence as to what happened at the KS facility where Plaintiff worked.

The Court perceived these issues during the informal discovery conferences with counsel in July 9, 2014 and October 15, 2014 and acknowledged that it was not sure who was "running the show" after KS was acquired by LOL in July 2012. The Court posed rhetorical questions, including: (1) Did KS personnel remain in control of the KS facility after the acquisition?; (2) Who was in charge of payroll after the acquisition and when did any change take place?; and (3) When did LOL policies become applicable at KS—was it right at the acquisition or long after? The Court expressed concern that there was such a short window of time in which Plaintiff was employed at the KS facility **after** LOL's acquisition—and an even shorter window after any LOL policies were implemented at KS—that discovery could turn into a very wide and deep search without indication that there was any commonality or typicality of the claims or that there was a significant enough nexus between Plaintiff and the proposed class to permit class-wide sampling.

The Court's apprehensions were correct. Plaintiff was first subject to some LOL policies and payroll systems beginning January 2013 for ***only three weeks*** before he was terminated. And, the KS on-site personnel who had run that facility prior to the LOL acquisition ***did not change even after the acquisition***. (*See*, LOL's opposition to P's motion for leave to amend, Dkt. 30.) Broad sampling of time and pay records and obtaining state-wide putative class member contact information are not appropriate where the nexus between Plaintiff and the rest of the proposed class is so tenuous. A protective order is necessary to prevent this overbroad and unnecessary fishing expedition.

DEFENDANTS LAND O'LAKES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

## II. SUMMARY OF RELEVANT FACTS

### A. Kozy Shack

KS produces pudding and was acquired by LOL in July 2012. (Declaration of Joan B. Tucker Fife ("Fife Dec.") ¶ 5, Ex. D, 6:10-18.) Prior to July 2012, KS and LOL were completely separate and distinct entities. (*See id.* at 5:25-6:18.) When asked during a pre-motion discovery hearing by Judge Snyder whether KS immediately adopted LOL's policies and management personnel upon the July 2012 acquisition, Plaintiff's counsel mentioned only that in mid to late December 2012, KS transferred onto LOL's payroll system and on or about January 1, 2013, KS started using a new employee handbook. (*Id.* ¶ 13.)

### B. Land O'Lakes

There are or were eight LOL California facilities—including KS—that have employed putative class members who fall under Plaintiff's proposed class definition. (*Id.* ¶ 7, Ex. E, 10:22-11:25.) Three of the eight facilities are currently closed and closed in 2010, years prior to LOL's July 2012 KS acquisition. (*Id.*) One of the eight did not open until the end of October 2012—about three months prior to Plaintiff's January 25, 2013 termination—and at least one pays for meal breaks. (*Id.*) Two of the five currently open facilities are unionized. (*Id.* ¶ 5, Ex. D.) As LOL's counsel stated during the July 9, 2014 hearing, none of the facilities other than KS make pudding; the facilities do separate tasks and produce different products. For example, one makes cheese, another makes butter, and yet another produces feed for livestock.

### C. Plaintiff Arturo Salgado

Plaintiff worked at the Turlock KS facility from November 2008 to January 2013. (Dkt. 1-1, Complaint, ¶ 1.) He never worked at any other LOL facility. (*Id.*) He worked in a warehouse and as a janitor. The overwhelming majority of Plaintiff's KS employment occurred before LOL's acquisition of KS. Indeed, Plaintiff was only at the KS facility for five months after the acquisition, and he was terminated less than a month after the KS facility had switched to LOL's payroll and adopted a new handbook.

In February 2013, Plaintiff filed a complaint with the California Division of Labor Standards Enforcement ("DLSE") for accrued and unpaid vacation. (Fife Dec. ¶ 13, Ex. H.) Plaintiff did not

3

attend the hearing, but a Human Resources representative from the KS facility did. (*Id.*) Before and after the DLSE hearing, LOL attempted to pay Plaintiff out all wages—including any accrued vacation, waiting time penalties, and them some—that LOL believed were owed to Plaintiff and which Plaintiff sought in his DLSE claim. (*Id.*)  As Plaintiff has acknowledged, he received several checks, including on February 1, February 23, and March 5, 2013, ***after*** his termination. (Dkt. 22, 1.) In written discovery and during meet and confer sessions with Plaintiff's counsel, LOL has repeatedly requested that Plaintiff explain what his vacation pay and waiting time penalties claims are based on and what amounts, if any, claims are owed because LOL's counsel did not think he was owed any vacation time or waiting time penalties because of these post-termination payments. (Fife Dec. ¶¶ 8-10, Ex. F, 9:14-26; Ex. G, 3:5-13.) To date, Plaintiff still has not provided an answer. (Fife Dec. ¶ 10.) Similarly, in his FAC, Plaintiff provides no specific information regarding his new claims.

### D. Plaintiff Sued Defendants Seeking To Represent A State-Wide Class.

After working for less than three weeks after LOL's handbook took effect at the KS plant, Plaintiff's employment with LOL terminated. On the day of his termination, the human resources representative who was regularly involved with carrying out a termination and handling issuance of final pay was not working and so was not involved in overseeing his termination. A few months later, on April 12, 2013, Plaintiff filed a formulaic class action complaint seeking to represent "[a]ll current and former non-exempt employees of [LOL] who worked at any of [LOL's] buildings or facilities in California at any time within the four years prior to the initiation of this action until the date that the class is certified." (Dkt. 1-1, Compl. ¶ 8.) The original claims date back to April 2009.

The Complaint alleges state-wide violations of California wage and hour laws involving: (1) denial of meal breaks; (2) denial of rest breaks; (3) inaccurate wage statements; (4) unpaid wages at discharge; (5) failure to pay accrued vacation pay at discharge; (6) violation of Business & Professions Code §§ 17200 et seq.; and (7) conversion. (Dkt. 1-1.) The FAC adds claims for: (8) minimum wages; (9) failure to pay all wages due, and (10) overtime. (Dkt. 34.)

### E. LOL's Production Of A Sample Of Time And Payroll Records From The KS Facility Where Plaintiff Worked.

On September 13, 2013, Plaintiff served requests for production to LOL seeking state-wide discovery of time and payroll records for "all current and former non-exempt employees of Defendants who worked at any of Defendants' buildings or facilities in California at any time" from April 12, 2009 to present (Document Requests 4, 8). (Fife Dec. ¶ 2, Ex. A.) The document requests also sought "all policies, procedures, and expectations applicable to Putative Class members" regarding meal and rest breaks, vacation, time reporting, final pay, and paid time off for all non-exempt employees in California from April 2009 to the present (Document Requests 3, 10-13). (*Id.*) Plaintiff also served interrogatories seeking additional the names, addresses, phone numbers, and email addresses of all LOL's non-exempt California employees from April 2009 to the present (Interrogatory 12). (Fife Dec. ¶ 4, Ex. C.)

LOL timely served objections and responses to Plaintiff's discovery. (*Id.* ¶¶ 2 and 4, Exs. B and D.) LOL objected to the document requests and interrogatories calling for state-wide class discovery on multiple grounds. (*Id.*) First, LOL objected that class discovery was overbroad as to scope and time, burdensome, and harassing, as it was a fishing expedition for discovery related to employees at facilities throughout the state subject to diverse working conditions. (*Id.*) Second, LOL objected that class discovery was neither relevant nor reasonably calculated to lead to discovery of admissible evidence, as the information and documents sought were irrelevant to certification of any possible class of employees similarly situated to and sharing typicality and commonality with Plaintiff, where Plaintiff only ever worked at the KS facility. (*Id.*) Third, LOL objected that the discovery was premature merits discovery, where no class has been certified and since Plaintiff had not yet established a *prima facie* showing that the class action requirements of Rule 23 were satisfied or that the discovery would likely produce substantiation of class allegations. (*Id.*) Finally, as to the interrogatories that requested personal contact information, LOL also objected on the grounds of privacy rights. (*Id.* ¶ 4, Ex. D.)

Between November 2013 to January 2014, LOL produced handbooks, policies, and collective bargaining agreements for its California facilities state-wide on a rolling basis. (*Id.* ¶ 6.)

Subsequently, the parties engaged in several meet and confer sessions about the scope of class-wide, precertification discovery of employee time and pay records. To avoid burdening the Court with having to hear a discovery motion, on May 6, 2014, LOL voluntarily produced certain time and payroll records for 15 KS current and former employees unilaterally selected by Plaintiff, representing 10% of the KS putative class at that time. (Fife Dec. ¶ 11.) LOL never agreed that the sample was relevant and consistently maintained its position that sampling especially outside of KS is not appropriate, and that a class list of all LOL California non exempt employees is not appropriate. (*Id*.)

### F. The Parties Met and Conferred On The Discovery But Reached An Impasse.

After LOL's production of the KS sample of time and pay records, Plaintiff renewed their original demand for sampling of such records from all of LOL's other California facilities. (*Id.* ¶ 12.) At no time has LOL ever conceded that such production of sample time and pay records was relevant; LOL's position has never changed regarding the state-wide production or sampling asked for. (*Id.*) The parties met and conferred on the subject of state-wide discovery on several occasions during which counsel acknowledged disagreement as to whether and to what extent expanded state-wide sampling of time and pay records was appropriate. (*Id.* ¶ 13.) Plaintiff brought this issue to the attention Judge Snyder in July 2014 and October 2014, and the parties submitted their synopses of the issue and respective positions by letter to Judge Snyder. (*Id.* ¶¶ 13-14, Exs. H-K.) Also, in the synopsis that Plaintiff submitted to the Court on October 14, 2014, Plaintiff requested—for the very first time without meeting and conferring with LOL beforehand—additional sampling of wage statements for additional KS employees for July and August 2012 and contact information for putative class members state-wide. (*Id.* ¶ 14, Ex. K.)

Judge Snyder held informal pre-motion discovery conferences regarding these state-wide class discovery issues on July 9, 2014 and October 15, 2014. Recognizing that the parties were at impasse, the Court directed the parties to file their respective motion to compel an motion for protective order in connection with the discovery sought. (Dkt. 40.)

As for Plaintiff's request for contact information for putative class members state-wide, the parties met and conferred about this issue on October 27, 2014. (Fife Dec. ¶ 15.) Based on

Plaintiff's insistence on obtaining contact information *state-wide*, the parties are also at impasse on this issue. (*Id.*)

### III.     LEGAL STANDARD

Upon a showing of good cause, the district court may issue any protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including any order prohibiting the requested discovery altogether, limiting the scope of the discovery, or fixing the terms of disclosure." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Federal Rule of Civil Procedure 26(c)(1)). Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. *See* Fed. R. Civ. Proc. 26(c), Advisory Comm. Notes (1970); *United States v. CBS, Inc.* 666 F.2d 364, 368-69 (9th Cir. 1982).

A district court enjoys broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Prior to certification of a class action, discovery is generally limited and in the discretion of the court. *Kamm v. California City Development Co.*, 509 F.2d 205, 209-210 (9th Cir. 1975); *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006). District courts have the authority to and often exercise their discretion to impose prohibitions or limitations class discovery. *See Hatch v. Reliance Ins. Co.*, 458 F.2d 409, 416 (9th Cir. 1985) (finding court has discretion to deny plaintiff's attempt to obtain discovery in order to solicit support for his effort to certify a class); *U.S. Equal Employment Opportunity Commission v. ABM Industries, Inc.,* 2008 WL 5385618, *4 (E.D. Cal. 2008) (citations omitted) (pre-certification discovery is within the discretion of the court, and limitations may be imposed within the court's discretion); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 564-65 (C.D. Cal. 2007) (limiting pre-class certification discovery to a sample of defendant's documents). A class representative engaging in pre-certification discovery must show good cause that warrants expansion of discovery beyond the class, as defined in the complaint. *Martinet v. Spherion Atlantic Enterprises,* 2008 WL 2557490 (S.D. Cal. 2008) (granting in part employer's motion for protective order and limiting class discovery to the office where plaintiff was employed and the year in which plaintiff worked there).

## IV. LEGAL ARGUMENT

### A. Plaintiff Is Not Entitled to State-Wide Class Discovery Because He Cannot Make A *Prima Facie* Showing Of Rule 23 Class Action Requirements And His Speculation That State-Wide Violations Might Exist Is Insufficient.

The Ninth Circuit has long held that a court cannot order class-wide discovery unless plaintiff demonstrates a *prima facie* case of possible class-wide violations. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). "Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete*, 767 F.2d at 1424.[3]

Here, Plaintiff has not set forth ***any evidence*** suggesting that anyone at any non-KS facility was subjected to ***any*** alleged uniform policy, practice, or procedure resulting in any alleged wage and hour violations. Plaintiff's FAC (and original complaint) allege merely based "on information and belief" that violations were the result of "uniform policies, practices and procedures governing the working conditions of, and payment of wages to, to [sic] Plaintiff and the rest of the Class." (Dkt. 1-1, ¶ 12; Dkt. 34, ¶ 15.) Yet, Plaintiff has still not alleged or identified any non-compliant state-wide policies. To the contrary, LOL produced employee handbooks, policies, and collective bargaining agreements from non-KS facilities nearly one year ago, (Fife Dec. ¶ 6) and Plaintiff does not cite to any of them to attempt to make out a Rule 23 *prima facie* showing. Indeed, those documents highlight the differences among the facilities, such as paid 30 minute meal breaks at at least one facility, and undermine Plaintiff's speculation of state-wide violations. In short, the putative class of all California non-exempt LOL employees is overbroad. Plaintiff cannot be typical of employees working at other LOL facilities—as he claims worked under the policies set forth in

---

[3] Under Federal Rule of Civil Procedure 23(a), the requirements for a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, 93) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class." In addition to these requirements, Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3).

1 the LOL-issued January 2013 handbook for only about three weeks—and does not share
2 commonality.  He was governed by KS's policies, subject to KS's timekeeping and payroll systems,
3 and under the direction of KS personnel.  According to Plaintiff, he worked under the LOL
4 handbook for only three weeks out of his over four-year employment at the KS facility.  (Dkt. 13.)
5 Plaintiff has never claimed to have any personal knowledge about any other non-KS facilities to
6 speak to practices there; he admits that he never worked at any other facility.  (Dkt. 41-1 at 12:6.)
7 Thus, Plaintiff is asking the Court to approve very wide and deep sampling based solely on his
8 assumption that similar violations may exist at other non-KS facilities.

9       Even if all the California facilities were KS facilities, all making pudding, courts repeatedly
10 deny plaintiffs' requests for discovery of employee information outside of the named plaintiff's own
11 facility where the request is based on mere speculation of state-wide violations.  For example, in
12 *Coleman v. Jenny Craig, Inc*., the plaintiff filed a lawsuit alleging many of the same claims that
13 Plaintiff Salgado alleges here, including failure to pay regular and overtime compensation, timely
14 pay wages upon termination, provide meal and rest breaks, and an unfair competition claim, and the
15 parties disagreed whether, before class certification, the employer should be required, to produce
16 putative class members' contact information, payroll records, and time records on a state-wide basis.
17 *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *1-3 (S.D. Cal., June 12 2013).  Even while
18 determining that the plaintiff had satisfied her burden under *Mantolete* to establish a *prima facie* case
19 under Rule 23, the court still found that the class-wide discovery requests were overbroad and
20 unduly burdensome, explaining that "numerous district courts in California have concluded that
21 plaintiffs were not entitled to discovery from branch locations where they never worked absent some
22 evidence to indicate company-wide violations." *Id.* at *8 (citing *Nguyen v. Baxter Healthcare
23 Corp.,* 275 F.R.D. 503, 508 (C.D. Cal. 2011)).  Moreover, the plaintiff had not provided enough
24 evidence to obtain discovery beyond the site at which she worked because she testified during
25 deposition that her manager was responsible for some of her claims—which was a site specific
26 issue—and that she could not confirm whether the practices she claimed to violate the law occurred
27 at every site.  *Id.* at *9.  Thus, the plaintiff's allegation of company-wide violations, standing alone,
28 "is admittedly an assumption that the Court finds insufficient to justify expanding discovery beyond

Winston & Strawn LLP
101 California Street
San Francisco, California 94111

Plaintiff's market." *Id.*

Numerous courts agree with *Coleman* in finding that unless plaintiff comes forward with some actual evidence, a plaintiff's claim that violations transpired at other work locations are merely assumptions that are insufficient to justify class-wide discovery of contact information and time and pay records. *See, e.g.*, *Holak v. Kmart Corp.*, 2014 WL 2565902, *2 (E.D. Cal. June 6, 2014) (plaintiff did not present sufficient evidence to justify class-wide discovery about employees from other California stores); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) ("In the absence of any evidence to suggest that similar violations occurred outside [Plaintiff's] facility, Plaintiff has failed to justify discovery at Defendant's other California facilities."); *Franco v. Bank of Am.*, 2009 WL 8729265, *4 (S.D. Cal. 2009) (same); *Williams v. Veolia Transp. Servs., Inc.*, 2008 WL 7389430, *2 (C.D. Cal. 2008) ("a speculative inference is not sufficient to show that discovery as to all…non-exempt…employees in California is likely to produce substantiation of class allegations"); *Martinet v. Spherion Atl. Enters., LLC*, 2008 WL 2557490, *2-3 (S.D. Cal. 2008) (limiting discovery to plaintiff's work location and the year in which plaintiff worked for employer); *U.S. v. University of Nebraska at Kearny,* 2014 WL 4215381, *4-5 (D. Neb. 2014) (affirming that discovery should be limited to the plaintiff's facility in a multi-facility company when the plaintiff's specific allegations only involved that facility); *Ingersoll v. Farmland Foods, Inc.*, 2011 WL 1131129, *11-13 (W.D. Mo. 2011) (denying the plaintiff's motion to compel discovery as overly-broad because the plaintiff sought information beyond the facility that was the subject of the alleged violations).

Plaintiff's proposal to utilize a *Belaire* notice[4] to obtain state-wide contact information (Fife Dec. ¶ 14; Dkt. 41-1) is also inappropriate here because he has failed to make any *prima facie* Rule 23 showing. By not making out a *prima facie* case showing of Rule 23 requirements state-wide and not submitting any evidence demonstrating that state-wide discovery will substantiate his class allegations, Plaintiff fails to meet the lowest of thresholds required to move forward with his

---

[4] In *Belaire-West Landscape, Inc. v. Superior Court,* 149 Cal. App. 4th 554 (2007), the court approved the use of an "opt-out notice" to putative class members whereby these members were informed that the plaintiffs' counsel would receive their contact information unless they chose to object to such a disclosure.

Winston & Strawn LLP
101 California Street
San Francisco, California 94111

requested expanded state-wide sample of time and pay records and obtaining contact information for putative class members state-wide. Because Plaintiff has not met his burden to obtain the requested additional discovery, the Court should issue the requested protective order.

### B. The Court Should Prohibit State-Wide Discovery Because It Is A Fishing Expedition.

Although plaintiffs are typically permitted to conduct some pre-class certification discovery, courts may prevent "fishing expedition" type discovery and impose reasonable limitations as to scope. *Mantolete*, *supra,* 767 F.2d at 1424 (citing *Doninger, supra*, 564 F.2d at 1313). "The district judge may reasonably control discovery to keep the suit within manageable bounds, and to prevent fruitless fishing expeditions with little promise of success." *Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (stating "District courts need not condone the use of discovery to engage in 'fishing expedition[s].'") It is within the district court's discretion to deny plaintiff's attempt to obtain discovery to solicit support for his effort to certify a class. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985).

Here, not only has Plaintiff failed to meet his burden of making a Rule 23 *prima facie* showing for all California facilities, discussed *supra*, he has not answered fundamental questions about his own claims—what are Plaintiff's vacation pay and waiting time penalties claims based on and what amounts, if any, does he claim are owed. (Fife Dec. ¶¶ 8-10.) Plaintiff filed these claims with the DLSE after his termination. (*Id.* ¶ 14, Ex. H; Dkt. 30 at 4.) Given that LOL attended the hearing and attempted to pay him out all wages—including any accrued vacation, waiting time penalties, and then some—that LOL believed were owed to Plaintiff and which he sought in his DLSE claim, LOL does not believe that Plaintiff has standing to assert all of his claims. Defendants have repeatedly posed these basic questions to him and have not received a response. Without providing such basic information about his own individual claim, Plaintiff should not be entitled to class-wide discovery simply to fish for evidence to substantiate claims that he himself does not have.

Moreover, LOL has already produced a sample of time and pay records from the only California KS facility—where Plaintiff worked exclusively. (Fife Dec. ¶ 11.) Plaintiff claims that the KS sampling shows that meal break violations were occurring both before and after LOL

acquired KS. (*Id.* ¶ 14, Ex. K; Dkt. 41-1.) LOL disagrees with that assertion, which is unsupported by any evidence, but even assuming it is true, it is impermissible for Plaintiff to impute alleged violations at KS to other facilities without first offering some actual evidence of possible violations at those other facilities. Thus, expanding sampling to LOL's 7 non-KS California facilities—only 5 of which are open, and 2 of which, unlike KS, are unionized, and totaling over 1,000 class members—is but a fishing expedition and should not be permitted.

Plaintiff also seeks contact information for putative class members state-wide. (Fife Dec. ¶ 14, Ex. K; Dkt. 41-1.) At this stage of litigation, this request is nothing more than a search for potential clients, particularly where Plaintiff has not made any showing that he has standing to assert all his claims. Given that Plaintiff has no basis to support state-wide class claims, the production of contact information is irrelevant and an unwarranted intrusion on LOL's employees' rights to privacy. The Court should deny Plaintiff's request for the identify of all state-wide employees as an improper attempt to obtain discovery to solicit support for his effort to certify a class. *Hatch, supra*, 758 F.2d at 416. And, a *Belaire* notice procedure would not cure the inherent aforementioned problems that render *any* state-wide contact information improper.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Protective Order barring state-wide class discovery of employee time records, pay records, and contact information.

Dated: November 12, 2014

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ *Joan B. Tucker Fife*
    Joan B. Tucker Fife
    Emilie C. Woodhead

*Attorneys for Defendants Land O' Lakes, Inc. and Kozy Shack Enterprises LLC*