1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

### EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| 9 ARTURO SALGADO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 1:13-CV-0798-LJO-SMS |
| 10 | |
| 11             Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND DISMISSING AS MOOT DEFENDANTS' MOTION FOR A PROTECTIVE ORDER. |
| 12      v. | |
| 13 LAND O' LAKES, INC., A DELAWARE CORPORATION; KOZY SHACK ENTERPRISES, INC., A NEW YORK CORPORATION, | |
| 14 | |
| 15             Defendants. | (Docs. 41 & 42) |
| 16 | |

17          Before the Court in the above-styled and numbered cause of action are Plaintiff's Motion to

18  Compel Further Production of Documents and for the Dissemination of a Class Notice, filed

19  November 11, 2014 (Doc. 41), and Defendants' Motion for Protective Order, filed November 12,

20  2014 (Doc. 42).  The Court deems the parties' briefings suitable for resolution without oral

21  argument. *See* Local Rule 230(g).  After a thorough review of the parties' arguments and evidence,

22  the Court will grant in part and deny in part Plaintiff's motion to compel, and will dismiss as moot

23  Defendants' motion for a protective order.

24

25  ## I.       PLAINTIFF'S ALLEGATIONS

26          Plaintiff Arturo Salgado ("Salgado") brings this putative class action against Defendant

27  Land O'Lakes, Inc. ("LOL") and Kozy Shack Enterprises, Inc. ("KS") for alleged violations of the

28

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* and California state wage and hour laws.[1]  Specifically, Plaintiff alleges in the First Amended Complaint ("FAC") that in violation of various California Labor Codes,[1] Defendants: (1) failed to pay minimum wages in violation of §1197; (2) failed to pay wages owed in violation of §§ 201, 203, 216, 218.5 and 227.3; (3) failed to provide meal and rest breaks in violation of §§226.7(b) and 512(a); (4) failed to provide accurate wage statements in violation of §226(a); (5) failed to timely pay wages upon termination in violation of §§201-02; (6) failed to pay accrued vacation pay upon termination in violation of §227.3; (7) failed to pay overtime compensation in violation of §§ 510 and 1194; (8) engaged in unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*; and (9) conversion.  The FAC alleges that:

> Defendants employed Plaintiff and the rest of the Class as non-exempt, hourly-paid employees. . . . Defendants adopted and maintained uniform policies, practices and procedures governing the working conditions of, and payment of wages to, to Plaintiff and the rest of the Class. . . . [T]hese uniform policies, practices and procedures violated California's labor laws, constituted unfair, fraudulent or illegal business practices under Business & Professions Code Sections 17200 *et seq.*, and constituted conversion of the property of Plaintiff and the rest of the Class.

Doc. 43 at ¶ 15.  Plaintiff alleges that the putative plaintiffs often worked through the meal break, and "Defendant had a uniform policy and procedure which deprived Plaintiff and the Class of time they were clocked in, as it automatically deducted pay for thirty (30) minutes' of time on each and every day. . . ." *Id.* at ¶ 18.  Plaintiff also alleges that "Defendants engaged in a uniform policy and procedure by which they engaged in time-shaving, unlawfully altering employee time records to misreport the amount of time worked and break time taken." *Id.*  Plaintiff further contends:

> Plaintiff and the rest of the Class were routinely required by Defendants to work more than five (5) hours per day before they were given the opportunity to take a thirty (30) minute uninterrupted meal break during which Plaintiff and the Class were and are free to leave the premises and were and are relieved of all duty, with the exception of those employees who worked six (6) hours or less per day and legally waived their meal periods by mutual written consent.  Furthermore, during the Class period, Plaintiff and the rest of the Class were

---

[1] Plaintiff's claims reference violations of California Labor Codes, unless otherwise specified.

2

required by Defendants to work more than ten (10) hours per day without receiving a second meal period of not less than thirty (30) minutes, with the exception of those employees who worked twelve (12) hours or less per day and legally waived their second meal periods by mutual written consent. Among other things, Defendants routinely did not provide thirty-minute uninterrupted meal breaks during which Plaintiff and the Class were free to leave the premises and were relieved of all duty. In addition, . . . Defendants failed to provide Plaintiff and the rest of the Class with required rest periods . . . .

*Id.* at ¶ 27.  Plaintiff also alleges that "Defendants failed to compensate Plaintiff and the rest of the Class for work performed during meal and rest periods that were not provided." *Id.* at ¶ 28. Plaintiff contends that the putative class suffered injury as a result of Defendants' knowing and intentional failure "to provide such accurate itemized wage statements to Plaintiff and the members of the Class, in that, among other things, such statements failed to show accurately all hours worked, the gross and net wages earned and all applicable hourly rates." *Id.* at ¶ 31.

Plaintiff also alleges that subsequent to his termination, Defendant violated Labor Code Section 201 and 202 because "Defendants did not pay Plaintiff, immediately upon such discharge, the wages that Defendants claimed were due Plaintiff. Moreover, the final wages that Defendants eventually paid Plaintiff did not include all of the wages that were in fact due and owing to Plaintiff." *Id.* at ¶ 35.  After LOL acquired KS and Plaintiff's employment with KS was terminated, Plaintiff contends that "Defendants willfully failed to pay Plaintiff and the members of the Sub-Class their vested and unpaid vacation, immediately upon their discharges in July of 2012," and also failed to pay "members of the Class who are former employees, their vested and unpaid vacation, either at the time of their discharge or within seventy-two (72) hours of their quitting." *Id.* at ¶ 39-40.   As a matter of uniform company policy and procedure, Plaintiff alleges that Defendants "engaged in time-shaving, unlawfully altering employee time records to misreport the amount of time worked and break time taken." *Id.* at ¶ 44.  As a result of this policy, "Plaintiff and the Class were and are under Defendants' control in excess of eight (8) hours in any day and/or more than forty (40) hours during the workweek, were required to work in excess of twelve (12)

hours in one day, and were required to work more than eight (8) hours on the seventh day of a workweek." *Id.* at ¶ 45. And, "[d]espite having worked such overtime, Plaintiff and the Class were not compensated for this time at the applicable overtime rates." *Id.* at ¶ 46. Taken together, Plaintiff argues, Defendants' pattern and practices "have been and continue to be unfair, fraudulent and illegal, and harmful to Plaintiff, the rest of the Class and the general public," the basis of an unlawful business practice action. *Id.* at ¶ 48. Finally, Plaintiff alleges that Defendants acted with "willful and knowing disregard of the rights of Plaintiff and the rest of the Class," and by failing to properly pay wages and other compensation to the putative class:

> Defendants have intentionally deprived Plaintiff and the rest of the Class of possession and use of their property and have intentionally converted the property to Defendants' own improper use. Plaintiff and the rest of the Class did not give their consent to Defendants' actions, and Defendants' actions have been a substantial factor in causing harm to Plaintiff and the rest of the Class.

*Id.* at ¶ 56-57.

## II.   LEGAL STANDARDS

### *Scope of Discovery*

Litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir. 2002). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct.

385, 91 L.Ed. 451 (1947)).  However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman,* 329 U.S. at 507.

### Class Actions

Precertification discovery lies entirely within the court's discretion. *See* Fed.R.Civ.P. 23; *see, e.g., Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 942 (9th Cir. 2009)).  The Ninth Circuit states that the "advisable practice" for district courts on precertification discovery, "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Doninger v. Pac. Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Artis*, 276 F.R.D. at 351.

As such, discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist. *Kamm v. California City Development Co.,* 509 F.2d 205, 210 (9th Cir. 1975); *Vinole,* 571 F.3d at 942 ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted," citing *Kamm, Doninger* and *Mantolete*.).  It has long been the case in this circuit that:

> [t]he propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.

*Id.; see also Doninger*, 564 F.2d at 1312 (finding that to deny discovery where it is necessary to determine the existence of a class or set of subclasses would be an abuse of discretion). *Doninger,* 564 F.2d at 1313 (citing *Kamm,* 509 F.2d at 210).  Whether to allow precertification discovery is

based on "need, the time required, and the probability of discovery resolving any factual issue necessary for the determination" of whether a class action is maintainable. *Kamm,* 509 F.2d at 210.

In seeking such discovery, "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements [*i.e.,* numerosity, commonality, typicality and adequacy of representation] of Fed.R.Civ.P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations.  Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion."). *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985).[5]  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, a member of a class of individuals may sue on behalf of all class members only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

**Belaire *Notice***

The term *Belaire* notice comes from *Belaire-West Landscape Inc. v. Superior Court,* 149 Cal.App.4th 554, 57 Cal.Rptr.3d 197 (2007).  It refers to an opt-out notice that was sent to potential class members in *Belaire* to inform them of the lawsuit and explain that if they did not want to have their contact information sent to plaintiff's counsel, they could complete and return an enclosed post card. *Id.* at 557.  The notice was found to be appropriate where the trial court "properly evaluated the rights and interests at stake, considered the alternatives, balanced the competing interests, and permitted the disclosure of contact information regarding Belaire-West's current and former employees unless, following proper notice, they objected in writing to the disclosure." *Id.* at 562.  The notice was not found to present a serious invasion of potential class members' privacy interests. *Id.*

6

## DISCUSSION

The instant discovery dispute concerns the scope of discovery and whether Defendant should be required to produce to Plaintiff, prior to class certification, wage statement, payroll and time-keeping records, as well as contact information for putative class members at LOL facilities state-wide.  The Court first addresses two threshold issues: (1) whether, as Plaintiff argues, he is entitled to discovery from *all* of Defendants' California facilities, or only the location where he worked; and, (2) whether, as Defendant argues, precertification discovery as requested is precluded because Plaintiff does not meet his *Mantelote* burden.

## I.      SCOPE OF PRECERTIFICATION DISCOVERY

Defendants object to the scope of Plaintiff's discovery requests as overly broad and unduly burdensome.  It is undisputed that Salgado only worked at one location – the Turlock-Teg Facility. Defendants argue that Plaintiff does not and cannot demonstrate that common questions predominate relative to LOL employees at locations other than where he worked because, unlike Plaintiff, employees at other California facilities were never KS employees, they worked on different LOL products, under different human resources departments, had different employee handbooks, and were on different payroll systems.  Defendants argue that because Plaintiff never worked at any other facility, his allegations as to possible labor code violations at other facilities are mere speculation.  The Court agrees.

Numerous district courts have concluded that plaintiffs were not entitled to discovery from locations where they never worked absent some evidence to indicate company-wide violations. *See, e.g., Nguyen v. Baxter Healthcare Corp.,* 275 F.R.D. 503, 508 (C.D.Cal. 2011); *Coleman v. Jenny Craig, Inc.*, No. 11-CV-1301-MMA DHB, 2013 WL 2896884, at *8 (S.D. Cal. June 12, 2013); *Martinet v. Spherion Atl. Enters., LLC,* No. 07cv2178 W(AJB), 2008 U.S. Dist. LEXIS

7

48113, at *2, 2008 WL 2557490 (S.D. Cal. June 20, 2008) (limiting discovery to the office where plaintiff worked until such time that plaintiff can show evidence of company-wide violations).

In *Coleman v. Jenny Craig, Inc.*, No. 11-CV-1301-MMA DHB, 2013 WL 2896884, at *9 (S.D. Cal. June 12, 2013), for example, the court limited the scope of discovery to only those branches where the plaintiff worked because "Plaintiff's testimony that the alleged improper practices occurred at every center throughout the country is admittedly an assumption that the Court finds insufficient to justify expanding discovery beyond Plaintiff's market.[] Due to the overly broad nature of Plaintiff's requests, it follows that requiring Defendant to produce information and documents regarding its employees outside of Plaintiff's market would be unduly burdensome." *Id.*

Likewise, here, Plaintiff only ever worked at the Turlock-Teg Facility and other than his allegations, Plaintiff presents no evidence to support his assumptions about other LOL facilities. Plaintiff's proposition that allegations of violations at his facility tends to indicate violations at all other California LOL facilities is mere speculation and insufficient to compel discovery on that scale. *Nguyen*, 275 F.R.D. at 508. Because Plaintiff has failed to produce any evidence of company-wide violations, and Defendant has produced contrary evidence showing policies at other locations are consistent with California law, the Court concludes that there is no basis at this time to require discovery beyond the facility where Plaintiff worked. *See, e.g. Coleman*, 2013 WL 2896884, at *9 (limiting discovery to only those branches where Plaintiff worked); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) (limiting discovery to facility where plaintiff worked until plaintiff provided evidence of company-wide violations); *Franco v. Bank of America,* 2009 U.S. Dist. LEXIS 111873 (S.D.Cal. Dec. 1, 2009) (same); *Martinet v. Spherion Atlantic Enterprises, LLC,* 2008 WL 2557490 at *2 (S.D.Cal. June 23, 2008) (same). If Plaintiff discovers evidence of violations at other facilities or company-wide violations in the future, then he may seek to expand the scope of discovery. The Court will limit precertification

8

discovery to individuals, like Plaintiff, who are or were non-exempt employees at the Turlock-Teg Facility.

## II.   WHETHER PLAINTIFF MEETS RULE 23 REQUIREMENTS OR DISCOVERY IS LIKELY TO SUBSTANTIATE CLASS ALLEGATIONS

Typically, the *Mantolete* standard is addressed at the outset of a case in determining whether *any* discovery is appropriate.  Discovery has been open since August 28, 2013. (Doc. 11), and the Court issued an order on March 10, 2014, setting a March 2, 2015 deadline to complete class certification discovery. (Doc. 20.)  Defendants arguably waived the argument that no discovery is warranted because Defendants did not object to the Court's allowance of discovery at that time, nor did Defendants assert that Plaintiff should be required to meet the discretionary burden established by *Mantolete*.  Moreover, in the parties' Joint Scheduling Report dated August 21, 2013, LOL agreed to precertification discovery aimed at finding whether typicality and commonality exist as to Plaintiff's claims.  *See* Doc. 10.  Nevertheless, the Court addresses the *Mantolete* standard as a threshold matter before addressing Plaintiff's specific requests.

With respect to numerosity,[2] it is uncontested that there are nearly 150 employees at the Turlock-Teg Facility and more than 900 between all the California LOL locations.  By either count, the numbers are sufficiently numerous to meet the requirements of Rule 23.  Defendants' argument primarily hinges on the proposition that Plaintiff has nothing in common with putative class members at the location where he worked, or anywhere else, because unique and individualized

---

[2] "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  Plaintiffs are not required to identify the precise number of class members.  Rather, "[t]he central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 680–81 (S.D.Cal. 1999).

questions predominate and mere allegations of a common question are insufficient. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011).  However, the commonality[3] requirement has been construed permissively; not all questions of law and fact need to be common. *See, e.g., Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI, 2014 WL 4930762, at *7 (E.D. Cal. Sept. 30, 2014) (*citing Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).  "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs.,* 731 F.3d 952, 957 (9th Cir.2013) (citing *Wal–Mart,* 131 S.Ct. at 2551.). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is "a single *significant* question of law or fact." *Abdullah,* 731 F.3d at 957 (citing *Mazza,* 666 F.3d at 589) (emphasis in original).

Here, Plaintiff alleges that Defendants established company policies and procedures which deprived Plaintiff and putative class members of wages due, meal and rest breaks, accurate pay stubs, payment for vacation accrued, and so on as set out in the FAC. *See* Doc. 34.  Plaintiff asserts that his injuries are similar to those of putative class members, and that proffered evidence supports typicality. *See Soto v. Castlerock Farming & Transport, Inc.,* 282 F.R.D. 492, 502 (E.D.Cal. 2012)

---

[3] "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"*Wal–Mart Stores, Inc. v. Dukes,* ——U.S. —— 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 7 U.S. 147, 157, (1982)).  "Rule 23(a)(2) is permissive, and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Washington v. Joe's Crab Shack* 271 F.R.D. 629, 636 (N.D.Cal. 2010) (quoting *Dukes v. Wal–Mart Stores, Inc.,* 603 P.3d 571, 599 (9th Cir. 2010)).  Plaintiffs' "claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores,* 131 S.Ct. at 2551.

(finding typicality because "[Plaintiff] asserts injuries similar to class members, and the evidence suggests other class members have been similarly injured.").[4]  The Court agrees.

In support of typicality and commonality, Plaintiff asserts that he was a non-exempt employee at the Turlock-Teg Facility who experienced harm as a result of Defendants' labor code violations, which he contends other non-exempt employees at his facility and across California also suffered.  Salgado submits documentation and declarations concerning his employment with KS and LOL as a non-exempt hourly employee, and argues that he has met his burden to show that discovery is likely to substantiate the class allegations by showing that his experiences are common to those of other LOL employees in California.  The Court agrees that Defendants' alleged conduct would result in a common impact across non-exempt employees at the Turlock-Teg Facility, and the factual inquiries into whether Defendant provided proper meal and rest breaks, satisfactory wage statements, and so on, would be common to the group.  This is sufficient to meet the prima facie requirement of commonality for that specific group. *See Washington v. Joe's Crab Shack, et al.,* 271 F.R.D. 629, 636 ("Plaintiff's claims, as pled, share a common question of law—whether any of the practices [defendant] is alleged to have engaged in constitute violations of California law—and at least some of the facts to be analyzed with respect to this question are the same.").

The Court concludes that as a result of Defendants' alleged conduct and resulting injuries, a common question predominates between Salgado and other non-exempt employees working at the Turlock-Teg Facility, but that Plaintiff fails to show commonality and typicality in relation to LOL employees at other branch locations.  Finally, the Court finds that a sufficient showing has been

---

[4] "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).  "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1184 (9th Cir. 2007) *on reh'g en banc sub nom. Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571 (9th Cir. 2010) rev'd on other grounds, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003)).

made with respect to adequacy.[5]   Accordingly, the Court finds that discovery is appropriate based on Plaintiff's prima facie showing of Rule 23(a)'s prerequisites. *See Mantolete,* 767 F.2d at 1424.

The Court emphasizes that it is not obligated to require a plaintiff to satisfy the *Mantolete* burden or delve into a merits review.  Courts *may* require such a showing prior to allowing precertification discovery, at their discretion.  *See Kaminske v. JP Morgan Chase Bank N.A.,* No. SACV 09–00918 JVS (RNBx), 2010 U.S. Dist. LEXIS 141514, at *5, 2010 WL 5782995 (C.D.Cal. May 21, 2010) (*Mantolete* and *Doninger* do not "suggest[ ] that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing. However, it is clear that a court has discretion to decide whether to require the prima facie showing . . . before allowing discovery.").  Here, the Court did not require this showing at the outset of discovery, and Defendant did not urge the Court to do so.  In any event, the Court concludes that Plaintiff can satisfy his burden.

Significantly, even assuming, *arguendo*, that Plaintiff could not make such a showing at this stage, the following analysis makes clear that at least some of the requested discovery "is likely to produce substantiation of the class allegations." *Id.*  Failing to allow precertification discovery where it is necessary to determine the existence of a class is an abuse of discretion. *Kamm,* 509 F.2d at 210.  Applying these findings, the Court will address Plaintiff's specific requests.

## III.    WAGE STATEMENTS, PAYROLL, AND TIME-KEEPING RECORDS

First, Plaintiff seeks production of a blind sample of wage statements for twenty percent (20%) of the employees at the Turlock-Teg Facility for the time period of July-August 2012.

---

[5] "Adequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing or interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir. 1994) (quoting *Brown v. Ticor Title Ins. Corp.,* 982 F.2d 386, 390 (9th Cir. 1992)).

Plaintiff also seeks production of a blind sample of twenty percent (20%) of payroll and time documents for employees at *all* California LOL facilities.[6]

About these requests Plaintiff makes the same argument: the records are relevant to "the manner by which the putative class was paid," and whether Defendants' payroll and time records "will establish the typicality and commonality of Plaintiff's claims" based on the hours worked, wages paid, documented meal and rest breaks, automated deductions made, and the accuracy of the wage statements.  On the basis of the small sample of documents previously produced, Plaintiff argues that he has demonstrated that a larger sample is likely to substantiate his class allegations. Plaintiff also contends that Defendants alone control the information he seeks and he has "no other method of obtaining documentary evidence which will substantiate his class allegations."  Finally, Plaintiff contends that he needs only a 20% sample of records for putative class members in order to provide an accurate analysis of the entire class, and that the use of such sampling resolves any concern that production of the records might be unduly burdensome.

Defendants object to the wage statement, payroll, and time document requests on the grounds that Plaintiff seeks records protected by individual privacy rights regarding wages and employment issues. "Compelled discovery within the realm of the right of privacy 'cannot be justified solely on the ground that it may lead to relevant information." *Id.* (quoting *Wiegele,* 2007 U.S. Dist. LEXIS 9444, at *2), 2007 WL 628041. "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy." *Wiegele,* 2007 U.S. Dist. LEXIS 9444, at *2, 2007 WL 628041

---

[6] In light of the Court's findings above, the Court proceeds with the understanding that both requests are limited to the Turlock-Teg Facility.

(quoting *Lantz v. Superior Court,* 28 Cal.App.4th 1839, 1854, 34 Cal.Rptr.2d 358 (Cal.Ct.App. 1994)).

## 1. Relevance

Where the court analyzed whether a plaintiff bringing a putative wage and hour class action governed by Rule 23 was entitled to discover information including work schedules, clock-in and -out data and meeting schedules in *Coleman v. Jenny Craig*, Civil No. 11–cv–1301–MMA (DHB), 2013 WL 2896884 (S.D. Cal. June 12, 2013), the Court finds the case instructive.  In that case, like here, the defendant objected to providing the information on privacy and other grounds.  The *Coleman* court found that payroll and time documents were clearly relevant. *Id.* at *8-10.

Similarly here, Plaintiff seeks to illustrate with the requested documents whether putative class members were working off the clock, were not provided adequate meal and rest breaks, or were not paid accrued vacation, overtime or minimum wage as alleged in the FAC.  To discover evidence of possible violations, Plaintiff argues that he needs to compare wage statements and payroll documentation to time-keeping records.  The Court agrees, and finds a 20% sample reasonable.  The instant request for wage statements and time-keeping documents "go[es] to the very heart of Plaintiff's case." *Coleman*, No. 2013 WL 2896884, at *8.  When limited to the group of non-exempt employees at the Turlock-Teg Facility where Plaintiff worked, the Court finds that the requests presently in dispute are relevant. *See* Fed. R. Civ. P. 26(b)(1).

## 2. Privacy Concerns

"When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced." *Artis,* 276 F.R.D. at 352 (quoting *Wiegele v. FedEx Ground Package Sys.,* 2007 WL 628041, at *2 (S.D.Cal. Feb. 8, 2007)).  "Even when discovery of private information is found directly relevant to the issues

14

of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." *Id.* (internal quotation marks and citation omitted).

Defendants vigorously oppose[7] providing the requested information, emphasizing the invasive nature of the financial information requested.

The Court finds that Plaintiffs have shown that further discovery is likely to produce substantiation of the class allegations. *See Artis*, 276 F.R.D. at 351. Plaintiff has filed a declaration stating that the punch/time cards and wage statements of the named Plaintiff and the previously disclosed small sample of records demonstrate that Defendants did not compensate them for all the hours that they worked or accrued vacation, failed to timely pay final paychecks, and that the wage statements do not provide the correct number of hours worked or the correct legal entity as the employer. Wage statements, payroll, and time keeping documents are likely to include name and contact information for putative class members and the legal entity that is the employer, but also the dates of the period for which the employee was paid. The data would not reveal secrets or intimate activity. Although Defendants are correct that financial information is highly sensitive, a sampling of timecards and wage statements is appropriate in this employment class action context. *See, e.g., Camp v. Alexander*, No. C-13-03386(EDL), 2014 WL 595939, at *4 (N.D. Cal. Feb. 14, 2014)

---

[7] By limiting discovery to one facility, the Court has obviated Defendants' overbreadth and undue burden objections. Defendants further object to Plaintiff's request on the grounds that it is premature and seeks documents neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding Defendants' contention that Plaintiff has never before asked for wage statements and jumps straight to a motion to compel, the Court wonders at Defendants' surprise when the fourth claim in the FAC plainly alleges that Defendants failed to provide accurate wage statements in violation of §226(a), and in Plaintiff's September 13, 2014 requests for production he asked for "all payroll records." Additionally, the Court has previously presided over an informal hearing on this discovery dispute at which Defendants' objections were limited to scope and privacy. That the parties do not agree is clear. The Court recognizes that even should it insist that the parties meet and confer on this issue, Defendants' vehement opposition points to likely additional motion practice if left unresolved. The matter is not premature. This objection is overruled and the Court proceeds in its analysis.

(*citing Hill v. Eddie Bauer,* 242 F.R.D. 556, 564–65 (C.D.Cal. 2007) (allowing discovery of at least a "sampling" of timecards and wage statements from across several stores)).  The Court concludes that disclosure of such documents would not constitute an invasion of putative class members' privacy.

To the extent that Plaintiff requests each putative class member's pay rate in payroll records, the Court reaches the opposite conclusion.  The court in *Coleman* confronted a similar issue when the plaintiff requested payroll records of the putative class members and found that these documents contained more confidential and sensitive information than contact information or time records. *Id.* at *11; *see also Sargant v. HG Staffing, LLC*, No. 3:13-CV-00453-LRH, 2014 WL 1653273, at *4-5 (D. Nev. Apr. 23, 2014).  Like the *Coleman* court, this Court finds that the privacy concerns inherent in the discovery of putative class members' payroll records outweigh Plaintiff's need for specific rates.   Plaintiff also has other ways to get this information.  If the action is conditionally certified, he could obtain individual payroll records directly from the opt-in plaintiffs.  If Plaintiff's counsel and new opt-in plaintiffs find that they do not have their payroll documents, counsel can request them from Defendants at that time.

The Court concludes that producing a sampling of wage statements and time-keeping records[8] are unlikely to significantly invade the privacy of the putative class members.  These records are solely within Defendant's possession and, notwithstanding the potential for opt-in plaintiffs, counsel has no other means of obtaining the information sought. *See Doninger,* 564 F.2d at 1313 (recognizing that "the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant.")  Therefore, the Court will compel Defendants to produce putative

---

[8] The Court finds that Defendant should also produce its "Kronos" time records.  Defendants acknowledge that "Kronos" is a legacy timekeeping system used by KS before LOL acquired the company, and for some period of time after the acquisition. *See* Doc. 46, p. 7.

class members' wage statements and time-keeping records.  The Court further concludes that privacy concerns justify withholding from production putative class members' pay rates and payroll documents, but denies without prejudice.

## IV.      PUTATIVE CLASS MEMBERS' NAMES AND CONTACT INFORMATION

Plaintiff requests production of a list of putative class members, after completion of an opt-out procedure as set forth in *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007).  Plaintiff contends that precertification discovery of contact information of putative class members is routinely allowed in wage and hour actions, and that the information is critical and relevant to establishing whether common questions of law or fact exist and if Plaintiff's claims are typical of those of the putative class members.  *See, e.g., Artis*, 276 F.R.D. at 353 (Courts have determined that, in a class action context, basic contact information is less sensitive than "more intimate privacy interests such as compelled disclosure of medical records and personal histories.").  Plaintiff further contends that class members' privacy concerns can be adequately protected through the use of an "opt-out" procedure in conjunction with a third-party administrator. *See, e.g., Belaire*, 149 Cal. App. 4th 554.  Plaintiff proposes implementing a protocol by which putative class members can opt out of having their contact information disclosed to Plaintiff's counsel.

Defendants object to the disclosure of contact information on the basis that it constitutes an invasion of the employees' right to privacy.  Notwithstanding the proposed *Belaire* protocol, Defendants still oppose disclosure.  However, the Court overrules that objection because, "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys.,* No. 06–CV01330–JM(POR), 2007 U.S. Dist. LEXIS 9444, at *2, 2007 WL 628041 (S.D.Cal. Feb. 8, 2007) (citation omitted).

//

17

### 1.  Relevancy

Courts in this circuit have made it clear that precertification disclosure of class members'

contact information, such as names, addresses, telephone numbers, and email addresses, is routine

practice in wage and hour class action litigation cases governed by Rule 23. *See, e.g., Bell v. Delta*

*Air Lines, Inc.,* No. C 13-01199-YGR (LB), 2014 WL 985829, at * 3 (N.D.Cal. Mar. 7, 2014);

*Wellens v. Daiichi Sankyo Inc*, No. C-13-00581-WHO (DMR), 2014 WL 969692 (N.D. Cal. Mar.

5, 2014); *Coleman v. Jenny Craig, Inc.,* 2013 WL 2896884; *Willner v. Manpower, Inc.,* No. C 11-

2846 JSW (MEJ), 2012 WL 4902994 (N.D.Cal. Oct. 16, 2012); *Brian Algee v. Nordstrom, Inc.,* No.

C 11-301 CW (MEJ), 2012 WL 1575314 (N.D.Cal. May 3, 2012); *Artis,* 276 F.R.D. at 352 ("The

disclosure of names, addresses, and telephone numbers is a common practice in the class action

context.") (citing *Currie–White v. Blockbuster, Inc.,* No. C 09–2593 MMC (MEJ), 2010 U.S. Dist.

LEXIS 47071, at *2, 2010 WL 1526314 (N.D.Cal. Apr. 15, 2010); *Putnam v. Eli Lilly & Co* .,508

F.Supp.2d 812, 814 (C.D.Cal. 2007) ("[I]t seems to the Court that contact with [class members]

could well be useful for plaintiff to determine, at a minimum, the commonality and typicality

prongs of Rule 23.")); *Babbitt v. Albertson's Inc.,* No. C–92–1883 SBA (PJH), 1992 U.S. Dist.

LEXIS 19091, at *6, 1992 WL 605652 (N.D.Cal. Nov. 30, 1992); *Kaminske,* 2010 U.S. Dist.

LEXIS 141514, at *14–15, 2010 WL 5782995 (finding contact information of putative class

members "relevant to aid in the identification and collection of . . . potentially common evidence, as

well as to test Plaintiff's theories regarding the commonality of Defendant's practices.")

("Regardless of whether this is enough to constitute a prima facie showing with respect to Rule

23(b), it is, at a minimum, sufficient to establish that the requested discovery is likely to produce

persuasive information substantiating the class action allegations."); *see also Gulf Oil Co. v.*

*Bernard,* 452 U.S. 89, 101–02, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (recognizing that class

counsel in Rule 23 class actions must be allowed to communicate with potential class members for the purpose of notification and gathering information, even prior to class certification).

This Court likewise finds putative class members' contact information is relevant to Plaintiff's claims and that disclosing the list to an audience limited to Plaintiff's counsel does not implicate serious privacy concerns. *Pioneer Electronics (USA), Inc. v. Superior Court,* 40 Cal.4th 360, 373 (2007) (disclosure of putative class members' contact information typically "involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches."); *see also Gulf Oil,* 452 U.S. at 89-90.

## 2. Privacy Concerns

Ultimately, "a court maintains wide latitude in deciding whether contact information of putative class members should be produced prior to class certification and, if so, whether the employees are entitled to be notified before their contact information is shared with opposing counsel." *York v. Starbucks Corp.,* No. 08–7919–GAF (PJWx), 2009 U.S. Dist. LEXIS 92274, at *3, 2009 WL 3177605 (C.D. Cal. June 20, 2009).

Discovery here is to be produced to Plaintiff's counsel *only* and used *only* in this litigation. Under these circumstances, the potential privacy interests of putative class members are adequately balanced. *See, e.g., Coleman* (*citing Artis,* 276 F.R.D. at 353); *Khalilpour v. CELLCO Partnership,* No. C 09–02712 CW (MEJ), 2010 U.S. Dist. LEXIS 43885, at *3, 2010 WL 1267749 (N.D.Cal. Apr. 1, 2010)); *see also Putnam,* 508 F.Supp.2d at 814 ("[T]he Court finds that plaintiff's needs here outweigh the concerns of a defendant. Plaintiff has shown a legitimate need for the requested information to determine, among other things, whether common questions of law or fact exist and if plaintiff's claims are typical. The need is especially compelling here where the information to be disclosed concerns not disinterested third parties, but rather potential plaintiffs themselves.").

The parties dispute the necessity of a protective order (*see* Docs. 42, 45, 49), in regards to state-wide discovery.  Though, in consideration of the privacy interests of the putative class members, the Court believes that the parties can craft a protective order that will sufficiently protect the putative class members' privacy rights in their contact information and limits use of that information without a time consuming opt-out procedure.

Numerous courts in this circuit "have also allowed precertification discovery of putative class members' confidential information subject to a protective order, without requiring prior notice to the putative class members." *Holman v. Experian Info Solutions, Inc.,* No. C 11–0180 CW, 2012 U.S. Dist. LEXIS 59401, at *48, 2012 WL 1496203 (N.D.Cal. Apr. 27, 2012); *see also Bottoni v. Sallie Mae, Inc.,* No. 10–03602 LB, 2012 WL 8304347 (N.D.Cal. June 1, 2012) (recognizing that "ordinarily, protective orders are enough," absent "special privacy concerns"); *see also Artis,*276 F.R.D. 348 (holding that Plaintiffs had a right to discovery of putative class members' contact information with a protective order in place); *see also Currie–White v. Blockbuster, Inc.,* No. C 09–2593 MMC (M EJ), 2010 WL 1526314, at *4 (N.D.Cal. April 15, 2010) (holding that a protective order is sufficient to address the privacy issues regarding employer's disclosure of employees' contact information in precertification discovery); *Putnam v. Eli Lilly & Co.,* 508 F.Supp.2d 812, 814 (C.D.Cal.2007) (in like circumstances, recognizing that "a protective order can strike the appropriate balance between the need for information and privacy concerns.").

Certainly Plaintiff's counsel may communicate with potential class members to gather information.  However, in an abundance of caution, the Court reminds the parties that misleading, intimidating, or coercive communications are prohibited by *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99–100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), and its progeny, without the need for an order from this Court. *See Villa v. United Site Servs. of California, Inc.,* 5:12–CV–00318–LHK, 2012 WL 5503550 (N.D.Cal. Nov. 13, 2012).  Any communications must be fair and accurate, and must

20

not be misleading, intimidating, or coercive. *See Benedict v. Hewlett-Packard Co.*, No. 13-CV-0119-LHK, 2013 WL 3215186, at *3 (N.D. Cal. June 25, 2013); *see also Khalilpour,* 2010 WL 1267749, at *4.

Additionally, to the extent that Plaintiff seek to use this contact information not only for discovery purposes but also to advise class members of the action, such a notice must be neutral, Plaintiff's counsel shall inform each potential class member that he or she has a right not to talk to counsel and that, if he or she elects not to talk to counsel, Plaintiff's counsel will terminate the contact and not contact them again. *See*, e.g., *Benedict* , 2013 WL 3215186 at *3-4; *Khalilpour,* 2010 WL 1267749, at *4; *Feske v. MHC Thousand Trails Ltd. P'ship,* No. 11–4124–PSG, 2012 WL 1123587 (N.D.Cal. Apr.3, 2012).  The Court also **ORDERS** that during the initial communication, Plaintiff's counsel must inform prospective class members that LOL and KS were compelled by court order to disclose the contact information, that the communication is highly confidential, and include contact information of Defendant's counsel, accompanied by a warning that Defendant's counsel does not represent the prospective class members. *See Id.* at *4; *Cf.* Order of October 10, 2008, *Lewis v. Wells Fargo & Co.,* No. 08–2670 CW (N.D.Cal.) (ECF No. 27).  The parties shall meet and confer in person to agree on the content of this notice **on or before 15 days from the date of this Order**.  If the parties cannot agree, each party shall submit a proposed notice to the Court **by Friday, January 9, 2015, at 5:00 p.m**.  The parties are advised to cooperate in the discovery process and are reminded to avoid taxing the resources of parties and the Court through excessive or unnecessary motion practice.

The Court finds that a standard protective order is sufficient to protect the putative class members' privacy rights. *See, e.g., Id at *3-4.*; *Benedict,* 2013 WL 3215186, at *2–3.; *Coleman,* 2013 WL 2896884, at *1-12 (finding "a protective order is sufficient and more efficient in light of the fact that Plaintiff's motion for class certification deadline is fast approaching.").  In this

context, an opt-out procedure is unnecessary. *See Bell v. Delta Air Lines, Inc*., No. C 13-01199

YGR (LB), 2014 WL 985829, at *2 (N.D. Cal. Mar. 7, 2014) (collecting cases).

### 3. Improper Solicitation

Finally, Defendants object[9] to the discovery request on the grounds that rather than seeking

the discovery to corroborate commonality and typicality, Plaintiff is essentially on a "fishing

expedition" to find clients or a more appropriate class representative.  The Court is not persuaded.

No evidence exists of actual or threatened misuse of the information.  There is no record in this

case that would support a restriction limiting communications between parties and potential class

members beyond the privacy protections articulated above. *See Gulf Oil Co. v. Bernard,* 452 U.S.

89, 101–02, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (holding that an "order limiting

communications between parties and potential class members should be based on a clear record and

specific findings that reflect a weighing of the need for a limitation and the potential interference

with the rights of the parties.").  The *Gulf Oil* court addressed the potential for abuse:

> We recognize the possibility of abuses in class-action litigation . . . [b]ut the mere
> possibility of abuses does not justify routine adoption of a communications ban that
> interferes with the formation of a class or the prosecution of a class action in accordance
> with the Rules. There certainly is no justification for adopting [a communications ban] in
> the absence of a clear record and specific findings of need.... Indeed, in many cases there
> will be no problem requiring remedies at all.

---

[9] On December 10, 2014, Defendants' filed new objections, this time to Plaintiff's counsel's
declaration in relation to the motion to compel (Doc. 52), in which Defendants challenge the
admissibility of evidence.  Defendants' counsel should well know it is "not the role of the Court in
this discovery motion to determine what evidence the District Judge will actually allow in at a trial in
this case, or what information the District Judge will determine is needed to decide the certification
motion." *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007); *see also Colonial
Life & Accident Insur. Co. v. Superior Court of Los Angeles County,* 31 Cal.3d 785, 791, n. 8, 183
Cal.Rptr. 810, 647 P.2d 86 (1982) (quoting *Pacific Tel. & Tel. Co. v. Superior Court,* 2 Cal.3d 161,
172–73, 84 Cal.Rptr. 718, 465 P.2d 854 (1970) ("[Courts] may appropriately give the applicant [for
discovery] substantial leeway, especially when the precise issues of the litigation of the governing
legal standards are not clearly established [citation]; a decision of relevance for purposes of discovery
is in no sense a determination of relevance for purposes of trial.") (brackets in original)).

452 U.S. at 104.  The Court declines the invitation to preemptively deny Plaintiff discovery to which he is entitled based on Defendants' speculative concern that Plaintiff's counsel will use it improperly, especially when sanctions exist to discourage such behavior.

## V.      CONCLUSION AND ORDER

Upon consideration of the authority cited and the facts of this particular case, the Court will limit discovery to the Turlock-Teg facility.  For the foregoing reasons, the Court finds that putative class members' contact information is necessary to Plaintiff's class certification motion.  The Court, *sua sponte*, contemplates additional privacy protections.  Balancing Plaintiff's need for discovery with Defendants' privacy concerns, the requested contact information shall be produced subject to a protective order.  While an "opt-out" procedure may be an appropriate method of protecting privacy rights, the Court concludes that these protections are sufficient to protect the limited disclosure of the requested information and a *Belaire* opt-out protocol is unnecessary. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (Doc. 41) is **GRANTED IN PART AND DENIED IN PART**, as follows.  To the extent Plaintiff requests information relative to putative class members from all LOL facilities in California, the motion is **DENIED**. Precertification discovery **SHALL** be limited to records pertaining to putative class members, which the Court defines as those individuals formerly or currently employed during the class period at the Turlock-Teg Facility.  Concerning the defined putative class members, the Court **COMPELS** Defendants to produce:

1. Wage statements for a random sample of twenty percent (20%) of the putative class members, for the period July-August 2012.

2. Time-keeping documents for a random sample of twenty percent (20%) of the putative class members, for the duration of the class period.

3. A list of names, addresses, and contact information of all putative class members formerly or presently employed at the Turlock-Teg Facility during the class period.

23

Parties' counsel **SHALL** meet and confer regarding the terms of a proposed order as outlined at length in section IV(2).  **On or before 15 days from the date of this Order,** the parties **SHALL** file a joint motion for protective order for the Court's review setting forth, at a minimum, the terms to govern the use of the to-be-disclosed names, addresses, telephone numbers, contact information, and documents, such terms to be drafted to protect the privacy interests of the third parties.  The parties shall ensure that the proposed protective order contains the language required by Local Rules.  In light of the forthcoming protective order, **IT IS FURTHER ORDERED** that Plaintiff's request for a *Belaire* notice is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that to the extent Plaintiff seeks to compel production of payroll records, the motion is **DENIED WITHOUT PREJUDICE**.

The Court has limited precertification discovery to the Turlock-Teg Facility, *supra*, therefore, **IT IS FINALLY ORDERED** that Defendants' Motion for a Protective Order relative to state-wide discovery is **DISMISSED AS MOOT** (Doc. 42).  Plaintiff retains the ability to expand the scope of discovery should he, in the future, find evidence of violations at other LOL facilities or company-wide violations.

IT IS SO ORDERED.

Dated:   **December 17, 2014**                    _____**/s/ Sandra M. Snyder**
                                                              UNITED STATES MAGISTRATE JUDGE