1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF CALIFORNIA**

7

8    ARTURO SALGADO, individually and on            CASE NO. 1:13-CV-798-LJO-SMS
     behalf of all others similarly situated,
9                                                    FINDINGS AND RECOMMENDATIONS
                       Plaintiff,                    RECOMMENDING DENIAL OF THE
10                                                   MOTION FOR PRELIMINARY
              v.                                     APPROVAL OF CLASS ACTION
11                                                   SETTLEMENT
     LAND O'LAKES, INC.; KOZY SHACK
12   ENTERPRISES, INC.; and DOES 1-25,
     inclusive,
13
                       Defendants.
14

15          Plaintiff brought this putative class action against Land O'Lakes, Inc. and Kozy Shack

16   Enterprises, Inc. ("Defendants"), alleging several violations of the California Labor Code for

17   failing to provide all wages due upon termination and failure to provide timely meal and rest

18   periods, among other things. Before the Court is Plaintiff's motion for preliminary approval of

19   class action settlement. Defendants do not oppose.

20   **I.      BACKGROUND**

21          Plaintiff alleges in his motion that he was a non-exempt, hourly employee of Land

22   O'Lakes ("LOL") in Turlock, California from November 2008 to January 2013. Kozy Shack

23   Enterprises ("KS") operated the Turlock facility until July 2012, when LOL purchased KS. When

24   Plaintiff was terminated by LOL in January 2013, he did not receive his final paychecks in a

25   timely way. During his employment, he did not receive timely meal and rest periods.

26          Plaintiff alleges that non-exempt employees at the Turlock facility who were terminated

27   also did not receive their final paychecks in a timely way. He alleges that Defendants

28   automatically deducted thirty minutes for meal periods, even if the meal period was less than thirty

1  minutes. This illegal time-shaving resulted in these employees being underpaid. He also alleges

2  that the non-exempt employees received late and short meal breaks.

3      In April 2013, Plaintiff filed his class action complaint in the Stanislaus Superior Court on

4  behalf of himself and all other current and former non-exempt employees of Defendants who

5  worked at any of Defendants' facilities in California within the four years prior to the initiation of

6  the action. Defendants removed the action to this Court. After several months of discovery, in

7  September 2014, Plaintiff filed a first amended complaint, which is the operative complaint in this

8  matter. The first amended complaint brings nine causes of action: (1) Violation of Labor Code

9  §1197 (Failure to Pay Minimum Wage), (2) Failure to Pay all Wages Due/Time-Shaving,

10 (3)Violation of Labor Code §§ 226.7(b) and 512(a) (Denial of Meal and Rest Breaks), (4)

11 Violation of Labor Code § 226(a) (Inaccurate Wage Statements), (5) Violation of Labor Code §§

12 201 and 202 (Unpaid Wages at Discharge), (6) Violation of Labor Code § 227.3 (Failure to Pay

13 Accrued Vacation Pay at Discharge), (7) Violation of Labor Code §§510 and 1194 (Failure to Pay

14 Overtime), (8) Violation of Business & Professions Code §§ 17200 *et seq.*, and (9) Conversion.

15     In December 2014, the Court also limited discovery to the Turlock facility only. During

16 these several months, Defendants made individual settlement offers to all current and former

17 employees at the Turlock facility. Individual settlements had been reached with approximately

18 94% of the putative class members who had been employed by KS. There are approximately

19 thirty-three putative class members who have not accepted and signed individual release

20 agreements with Defendants.

21 **II.    THE PROPOSED SETTLEMENT**

22     The proposed settlement sets forth the settlement class as all current and former non-

23 exempt employees of Defendants who have not already executed a settlement and release

24 agreement and who worked at the KS facility in Turlock between April 12, 2009 and the date of

25 preliminary approval. Each member of the settlement class will be mailed a "Settlement Notice

26 Packet" which will consist of a notice of settlement and claim form with preliminary estimates of

27 individual distribution amounts. Individual distribution amounts will be calculated as follows: the

28 sum of (1) the number of eligible workweeks from April 12, 2009 to December 22, 2012

2

1  multiplied by $10.00 per workweek; and (2) the number of eligible workweeks from December

2  23, 2012 to the date of preliminary approval multiplied by $2.50 per workweek. The December

3  23, 2012 date represents the date KS transferred to LOL's payroll system. Settlement class

4  members who are not employed by LOL on the date of preliminary approval will also receive

5  $250.00 for waiting time penalties under Labor Code § 203. The proposed individual distribution

6  amounts are based on the individual settlements offered to the putative class members and already

7  accepted by all but approximately thirty-three remaining putative class members. In return, the

8  parties release any and all claims alleged in the first amended complaint that exist through the

9  class period.

10       The Settlement Notice Packet will also contain instructions on how to challenge the

11  computation of their individual settlement payment by submitting a written challenge within 45

12  days. Settlement Class Members will also have 45 days to submit a claim form with a federal W-4

13  tax form and California DE-4 tax form, which will be provided in the notice packet.

14       The proposed settlement includes a provision for payment of attorney's fees and costs of

15  suit. Class counsel will seek fees and costs of up to $80,000, which will not be deducted from the

16  individual settlement payments. Fees and costs are subject to Court approval. The proposed

17  settlement also provides an enhancement payment for Plaintiff Arturo Salgado of $1,000, which

18  will not be deducted from the individual settlement payments. LOL will self-administer the

19  settlement and will bear the costs of notice and settlement administration.

20  **III.    DISCUSSION**

21       The claims of a certified class may only be settled with court approval. Fed. R. Civ. P.

22  23(e). "Approval under [Rule] 23(e) involves a two-step process in which the Court first

23  determines whether a proposed class action settlement deserves preliminary approval and then,

24  after notice is given to class members, whether final approval is warranted." *Nat'l Rural*

25  *Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). While there exists "a

26  strong judicial policy favoring settlement of class actions," "judges have the responsibility of

27  ensuring fairness to all members of the class presented for certification." *Staton v. Boeing Co*., 327

28  F.3d 938, 951-52 (9th Cir. 2003). "Especially in the context of a case in which the parties reach a

1  settlement agreement prior to class certification, courts must peruse the proposed compromise to

2  ratify both the propriety of the certification and the fairness of the settlement." *Id*. at 152.

3  A. <u>PROPRIETY OF CLASS CERTIFICATION</u>

4  Class certification is governed by Federal Rule of Civil Procedure 23. The party seeking

5  class certification must demonstrate: "(1) the class is so numerous that joinder of all members is

6  impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

7  defenses of the representative parties are typical of the claims or defenses of the class, and; (4) the

8  representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P.

9  23(a). The proposed class must also satisfy one of the conditions of Rule 23(b); usually, a finding

10 that the questions of law or fact common to class members predominate over any questions

11 affecting only individual members, and that a class action is superior to other available methods

12 for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

13 Here, Plaintiff has not demonstrated that there are questions of law or fact common to the

14 proposed settlement class such that class treatment is proper. The commonality requirement

15 necessitates a showing that there are questions of law or fact common to the class. *Wal-Mart*

16 *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). Any class complaint will raise common

17 "questions" such as: Were all plaintiffs employed by defendants? Or, "Is that an unlawful

18 employment practice?" *Id*. at 2551. However, "[c]ommonality requires the plaintiff to demonstrate

19 that the class members 'have suffered the same injury,' […] This does not mean merely that they

20 have all suffered a violation of the same provision of law." *Id*. (internal citations omitted). The

21 class members' claims must depend on a common contention whose "truth or falsity will resolve

22 an issue that is central to the validity of each one of the claims in one stroke." *Id*. The capacity of a

23 classwide proceeding to generate common answers to the common questions is what matters to

24 class certification. *Id*.

25 Plaintiff's main allegations are related to wages unpaid on termination by KS and

26 Defendants' alleged practice of automatically entering a thirty minute meal period when less than

27 thirty minutes was taken. However, the class includes all non-exempt hourly employees at

28 Defendant's Turlock facility, and Plaintiff has not demonstrated that each of these class members

4

1   have suffered the same injury. Plaintiff's claim regarding untimely paid wages upon termination or

2   voluntary discharge depends on the employee being terminated or voluntarily discharged. The

3   language of the motion anticipates that not all proposed class members were terminated or

4   otherwise left their employment with Defendants; hence, they could not have suffered the same

5   injury of untimely paid wages upon termination or the related claim of failure to pay vested

6   vacation upon voluntary or involuntary termination of employment. Whether or not Defendants

7   failed to pay all wages due, including accrued vacation, upon termination is not a question of law

8   or fact that is common to the class.

9       Also, Plaintiff alleges that each of the class members suffered from illegal time-shaving

10  whereby Defendants would automatically indicate on the class members' time sheets that a thirty

11  minute meal period was taken, although less than thirty minutes may have been taken. This

12  practice also resulted in inaccurate wage statements, failure to pay overtime, failure to pay

13  minimum wage, and failure to pay all wages due. These latter four claims are structured such that

14  they are dependent on a finding of illegal time-shaving. *See* Doc. 34, FAC at 8:1-10, 9:25-28,

15  13:8-15, 17:8-12. The FAC does not contain allegations regarding inaccurate wage statements,

16  failure to pay overtime, failure to pay minimum wage, and failure to pay all wages due

17  independent of Defendants' alleged practice of automatically deducting a thirty-minute meal

18  period when less than thirty minutes was taken.

19      Plaintiff notes that Defendants argue that the majority of the proposed class members were

20  employed as production-line workers, while Plaintiff was employed as a janitor. The production

21  line completely shuts down during the meal period, making it very improbable that the same meal

22  period procedure was applied to all of the class members. The class members who worked on the

23  production line would be unable to perform production-line work during the meal period when the

24  production line was shut down. Plaintiff and other non-exempt employees who did not work on

25  the production line would not have been subject to the same restriction.

26      Therefore, even if Plaintiff's contention that Defendants had a uniform policy to

27  automatically enter a thirty-minute meal period were found to be true and in violation of the Labor

28  Code, this "answer" does not resolve the issue of time shaving for the majority of the class

1  members who were unable to do their production-line work during the thirty-minute meal period.

2  The duration of the meal periods was not administered in the same way to production-line workers

3  and other non-exempt hourly workers. Similarly, Plaintiff's claim for failure to provide timely

4  meal and rest periods raises a similar discrepancy between production-line workers and other non-

5  exempt hourly workers.

6        In addition, Plaintiff's last two claims –unfair business practices and conversion of wages-

7  rely on a finding that Defendants are liable for any of the first seven causes of action. Plaintiff has

8  not demonstrated the requisite commonality for any of his class claims.

9        Thus, Plaintiff's proposed settlement class lacks the necessary commonality element and

10  the proposed class should not be certified. The Court does not reach Plaintiff's showing of the

11  other elements of Rule 23(a) or the requirements of Rule 23(b) at this time.

12        B.  <u>THE FARINESS OF THE SETTLEMENT</u>

13        Rule 23(e) permits approval of a class action settlement only after a fairness hearing and a

14  determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P.

15  23(e)(2). At the preliminary approval stage, "[i]f the proposed settlement appears to be the product

16  of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

17  grant preferential treatment to class representatives or segments of the class, and falls within the

18  range of possible approval, then the court should direct that the notice be given to the class

19  members of a formal fairness hearing." *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078,

20  1079 (N.D. Cal. 2007)(*quoting Schwartz v Dallas Cowboys Football Club, Ltd*., 157 F. Supp. 2d

21  561, 570, n.12 (E.D. Pa. 2001)).

22        In addition, "[p]rior to formal class certification, there is an even greater potential for a

23  breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must

24  withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest

25  than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re*

26  *Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) ; *see also Staton v.*

27  *Boeing Co*., 327 F.3d 938, 972 n.22 (9th Cir. 2003) (it is the district court's duty to police "the

28  inherent tensions among class representation, defendant's interests in minimizing the cost of the

total settlement package, and class counsel's interest in fees."). "Collusion may not always be

evident on the face of a settlement, and courts therefore must be particularly vigilant not only for

explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their

own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654

F.3d at 947.

> The *Bluetooth* opinion identified three such signs adopted from other circuits:
> (1) when counsel receive a disproportionate distribution of the settlement, or when the
> class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of
> attorneys' fees separate and apart from class funds, which carries "the potential of enabling
> a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting
> an unfair settlement on behalf of the class; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be
> added to the class fund.

*Id*. (internal citations omitted). Each of these warning signs were present in the *Bluetooth*

settlement and are present in Plaintiff's proposed class settlement. Although Plaintiff will submit

request for fees at a later time, the maximum request is included as a provision of the proposed

settlement and must be considered in examining the fairness of the proposed settlement.

First, under the proposed settlement, class counsel is set to receive a disproportionate

distribution of the settlement. Plaintiff does not explicitly allege that the $80,000 amount was

calculated by the lodestar method, but asserts that the lodestar calculation exceeds $80,000

already. The lodestar method may be a "perfectly appropriate method of fee calculation," but

courts must "guard against an unreasonable result by cross-checking their calculations against a

second method." *Bluetooth*, 654 F.3d at 935. The percentage-of-recovery method can be used to

assure that counsel's fee does not dwarf class recovery. *Id*. Twenty-five percent of the fund

created by the settlement is generally considered the benchmark percentage for fee awards from a

common fund. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th

Cir.1990). "[W]here the plaintiff achieved only limited success, the district court should award

only that amount of fees that is reasonable in relation to the results obtained." *Hensley v.

Eckerhart*, 461 U.S. 424, 440 (1983).

Plaintiff estimates that Mr. Salgado's individual settlement amount calculated under the

7

proposed formula, not including his enhancement payment, will be about $2,150. If each of the

thirty-three putative class members opted in to the settlement class and received the same amount

as Mr. Salgado, the payout to the class would be $71,950, including $1,000 for Mr. Salgado's

enhancement payment. When comparing the potential payout with the $80,000 in proposed

attorney's fees to the total settlement amount, the attorney's fees amount is more than 50% of the

total settlement amount.

Further, it is very likely that the amount paid to the class members will be drastically less

than $70,950. Plaintiff states that Defendants sent individual settlement offers to all of the putative

class members during 2014 and received 75% acceptance of the individual offers. The remaining

thirty-three class members did not enter into an individual settlement agreement for some reason

or other –perhaps they are unable to be reached or explicitly refused the individual settlement- but

their failure to enter a settlement agreement is not because their identities were unknown or it was

not previously offered. This indicates that upon ordering class notice, these thirty-three would

remain unreachable or choose to opt out of the settlement which is identical to what was

previously offered individually. The anticipated notice process requires putative class members to

submit various forms within a specified time frame in order to receive their individual settlement

amount. Based on these facts, it is most probable that only a very small monetary amount would

be paid to the class members other than to Mr. Salgado. In light of this probability, class counsel's

portion of the distribution settlement appears even more egregious.

Second, the parties have negotiated a "clear sailing" arrangement, in which Defendants

agree not to object to the attorney's fees award up to the specified value of $80,000. *See Bluetooth*,

654 F.3d at 939. Plaintiff states that the proposed settlement provides for cash payments to

participating class members, payments for attorney's fees and costs, and an enhancement award to

Mr. Salgado in return for the plaintiffs' general release and waiver of all claims based on facts

alleged in the first amended complaint. Defendants do not oppose this amount. The fact that the

attorney's fee provision is severable from the agreement and is subject to final court approval does

not relieve the provision from scrutiny. "The very existence of a clear sailing provision increases

the likelihood that class counsel will have bargained away something of value to the class. *Id*. at

8

1   947 (*quoting Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). In

2   addition, "the class recovery and the agreement on attorney's fees should be viewed as a "package

3   deal.'" *Id*. at 948-49.

4          Third, undistributed funds will remain with Defendants. While this provision is not

5   explicitly labeled as a reverter, it is the same in essence –Defendants retain any undistributed

6   amounts due to the class. The proposed settlement does not establish a gross settlement fund out of

7   which each participating class member's distribution amount will be paid, with the undistributed

8   funds going towards a *cy pres* fund or otherwise benefitting the class. Instead, the proposed

9   settlement is structured such that Defendants will distribute funds to each class member who

10  returns the appropriate forms in the appropriate time according to the calculation. If half of the

11  class members return the forms as set forth, Defendant will distribute approximately $22, 250 and

12  retain the same amount in undistributed funds. If no class member returns the forms as set forth,

13  Defendants will not distribute any amount to the class and will retain all funds. When considering

14  the unlikelihood of significant class participation, Defendants retention of the undistributed funds

15  will result in very little payout to the class or for the benefit of the class.

16          A settlement may still be fair, reasonable, and adequate even with the existence of these

17  three signs. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). However, in this case, the

18  existence of these signs signals an underlying motive by the parties to dispose of the total claim

19  with little regard to the class benefit. The fee provision is disproportionately large when

20  considering the small to nil monetary benefit to the class, the fee amount is undisputed by

21  Defendants, and Defendants will retain any undistributed amounts allocated to the class. In short,

22  Defendants will pay $80,000 in attorney's fees and potentially nothing to the class in exchange for

23  a release of claims. The degree of success attained does not warrant such fees. The proposed

24  settlement will offer the individual class members the same amount they were previously offered

25  and did not accept. Hence, class counsel's efforts did not improve the outcome for each class

26  member, even though counsel argues that their efforts served as a catalyst for the individual

27  settlement offers. Also, the proposed settlement does not ask for an injunction to stop Defendants

28  from their allegedly illegal practice, and allowing the settlement calculation to include a monetary

1  payment for all weeks worked up to the date of preliminary approval implies that the violations are

2  ongoing. This calls into question the adequacy of the settlement. Taken as a whole, the proposed

3  settlement agreement, and the attorney's fee provision in particular, is unfair, unreasonable, and

4  inadequate. The motion for preliminary approval of class action settlement should be denied.

5  **IV.    RECOMMENDATION**

6          Plaintiff has failed to demonstrate that there are questions of law or fact common to the

7  proposed settlement class and that the proposed settlement is fair, reasonable, and adequate,

8  especially with regards to the attorney's fees provision. Therefore, it is recommended that

9  Plaintiff's motion for preliminary approval of class action settlement be DENIED.

10          These findings and recommendations are submitted to the United States District Court

11  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-

12  304 of the Local Rules of Practice for the United States District Court, Eastern District of

13  California.  Within thirty (30) days after being served with a copy, Petitioner may file written

14  objections with the Court, serving a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  The Court will then review

16  the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that

17  failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19

20

21  IT IS SO ORDERED.

22  Dated:   __**November 18, 2015**__          _____**/s/ Sandra M. Snyder**__
                                               UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28